CHRISTINA A. JUMP (DC ID TX151)
    cjump@clcma.org
CHARLES D. SWIFT (DC ID 987353)
    cswift@clcma.org
ALYSSA F. MORRISON (DC admission pending)
    amorrison@clcma.org
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Ste. 102
Richardson, TX 75081
Tel: (972) 914-2507
Fax: (972) 692-745

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **NATHAN MOWERY,** | ) | CASE NO: 20-3170 |
| ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | **PLAINTIFF'S ORIGINAL** |
| | ) | **COMPLAINT AND REQUEST** |
| **NATIONAL GEOSPATIAL** | ) | **FOR INJUNCTIVE RELIEF** |
| **INTELLIGENCE AGENCY,** MS N73, | ) | **AND DAMAGES** |
| 7500 GEOINT Drive, | ) | |
| Springfield, VA 22150-7500 | ) | |
| and **GINA HASPEL**, in her | ) | |
| official capacity as Director of the Central | ) | |
| Intelligence Agency, | ) | |
| Washington, D.C., 20505 | ) | |
| *Defendants.* | ) | **JURY TRIAL DEMANDED** |
| | ) | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF AND DAMAGES

### I. INTRODUCTION

Plaintiff Nathan Mowery ("Plaintiff") is a combat veteran who works as a government contractor in the intelligence field, and now brings this suit for religious discrimination and retaliation.

1

Plaintiff transitioned from military service to working as a civilian for the Department of Defense ("DOD"), in a government contractor ▮▮▮▮▮ position for the National Geospatial-Intelligence Agency ("NGA"). This position was located ▮▮▮▮▮ ▮▮▮▮▮. For this position, Plaintiff was granted security clearance and received top performance awards.

Plaintiff later received an offer to be a direct employee ▮▮▮▮▮, rather than as a contractor, where Plaintiff would perform the same duties and enjoy more job security and associated benefits. The only additional security requirement for this government position was completion of a mental health evaluation to retain his existing "Staff-Like Access." During this exam, the examining officer asked about Plaintiff's previous conversion to Islam, with further invasive questioning regarding Plaintiff's religious beliefs.

After this exam, Plaintiff received notice from the CIA that the Agency determined it would no longer continue his security assessment, based on information obtained during processing. Plaintiff later learned from NGA Security that the clearance processing was halted due to the mental health evaluation. In July 2017, Plaintiff was constructively discharged from his ▮▮▮▮▮ position, with his badge deactivated. Plaintiff's employers subsequently moved him to a Staff Officer desk ▮▮▮▮▮, where he held little to no job responsibilities.

In August 2017, Plaintiff received a new offer for a contractor position ▮▮▮▮▮ ▮▮▮▮▮, utilizing his existing contractor-based security clearance. Plaintiff remains in a similar contractor position to this day, with access to the same types of information and performing similar duties. However, by remaining in a contractor role rather than as a direct full time employee, he misses out on job advancement, security and benefits.

Plaintiff properly filed EEO complaints regarding these actions, in compliance with the Notification and Federal Employee Antidiscrimination and Retaliation Act of 2002 ("No FEAR Act"). In the EEOC proceedings, NGA denied wrongdoing by pointing its finger at the CIA, since the CIA administered the mental health examination. However, the fact remains that Plaintiff was an employee of NGA at all relevant time periods. The CIA further argued that it committed no wrongdoing, as it was not Plaintiff's direct employer. NGA, however, is not in charge of the relevant onboarding process for the position which Plaintiff accepted but was not able to begin. Due to the actions of both agencies, therefore, Plaintiff suffered discrimination on the basis of his religion, as further described below, resulting in the loss of a job for which he was qualified. Accordingly, Plaintiff's claims against NGA are related to and inextricably intertwined with, not separate from, his claims against the CIA.

Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq. ("Title VII"), for discrimination and retaliation based on religion.

## II.     JURISDICTION AND VENUE

1. This is a civil action brought under Title VII of the Civil Rights Act of 1964; therefore, this Court has subject matter jurisdiction over this action, which is appropriately brought under 42 U.S.C. §2000e-(5)(f)(3).

2. Venue is appropriate venue under 42 U.S.C. §2000e-(5)(f)(3), because Defendants have offices and do business within the District of Columbia.

## III.     PARTIES

3. Plaintiff Nathan Mowery is a U.S. citizen and U.S. Army Bronze Star recipient and combat veteran. He currently resides in ▮▮▮▮▮▮▮▮▮▮.

4. NGA is a combat support agency that falls within the United States Department of

Defense. Its primary mission is to collect, analyze and distribute geospatial intelligence in support of national security interests. NGA has continuously employed over 15 employees during the relevant time period and now.

5.  Gina Haspel is the Director of the CIA. The CIA has continuously employed over 15 employees during the relevant time period and now.

## IV.  STATEMENT OF FACTS

**A.  Events Preceding EEO Complaint Activity**

6.  Plaintiff is a U.S. Army Bronze Star recipient and combat veteran.

7.  Plaintiff is a U.S. citizen principally residing in ▇▇▇▇▇▇▇▇▇.

8.  Plaintiff began working for the DOD as ▇▇▇▇▇▇▇▇ in a government contractor position with the NGA at ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

9.  Plaintiff received security clearance and "Staff-Like Access" after successful completion of a full scope polygraph in May 2014.

10. In this contractor analyst capacity, Plaintiff received top performance awards.

11. In this contractor analyst capacity, Plaintiff was never cited for any security violations.

12. There is no indication that NGA or the CIA knew of Plaintiff's religion during his initial contractor work.

13. On November 13, 2016, Plaintiff was offered and accepted a ▇▇▇▇▇▇▇▇ position, as opposed to being a contractor, where he would perform the same duties and enjoy more job security and associated benefits.

14. At that time, his system access to other government agencies, ▇▇▇▇▇▇▇▇ was temporarily suspended while the CIA began assignee processing for Plaintiff's new government employment position, due to his anticipated transition from a contract employee of NGA to a

staff employee of NGA.

15. The additional security requirement for this government position included completion of a mental health evaluation to retain his existing "Staff-Like Access."

16. On December 27, 2016, as part of required protocol, Plaintiff underwent a vetting process which was similar to the one he did as a contractor, with the addition of undergoing an employee mental health evaluation.

17. During this employee mental health exam, the examining officer raised the issue of Plaintiff's conversion to Islam.

18. After being asked if he consumed alcohol, Plaintiff explained that he has not had a drink in the past two years. When questioned why, he responded that it was based on his religious views.

19. The psychologist asked specifically what religion he was referring to, and Plaintiff affirmed to her that he had converted to Islam.

20. Additional questions from the examiner included whether Plaintiff prayed five times a day, and what mosque he attended.

21. No other topics were discussed during the session in nearly as much detail as his religious views and practices.

22. Plaintiff also completed a questionnaire for his assignee processing.

23. None of the 500 questions in the questionnaire concerned religion, despite the examiner's disproportionate focus on the subject in the evaluation with Plaintiff.

24. In correspondence received on May 17, 2017 from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Plaintiff learned that the CIA determined it would no longer continue his security clearance assessment, based on information obtained

during his Staff-Like Access processing.

25. ▮▮▮ also wrote that "there is no appeal regarding this decision, nor will additional information be provided."

26. The email concluded with the assertion that it "did not represent a security clearance denial for a national security position," and therefore could not be appealed.

27. The language was also clear that the Agency intended no further action to complete the clearance assessment, rendering it an effective denial of security clearance.

28. On June 9, 2017, ▮▮▮ informed ▮▮▮ that Plaintiff's clearance processing was halted due to a failed mental health evaluation.

29. ▮▮▮ also notified ▮▮▮ that Plaintiff's security packet was not the issue.

30. Around May 2017, Plaintiff informed ▮▮▮ that his assignee processing had halted, and that he was concerned by questions raised during the mental health examination that pertained to his religion.

31. On July 24, 2017, Plaintiff was constructively discharged from his ▮▮▮ position, told that he was no longer authorized to be in the office, and his badge was deactivated.

32. On this date, several NGA officials purportedly learned of Plaintiff's religion for the first time.

33. Plaintiff's superiors subsequently moved him to a Staff Officer desk ▮▮▮, where he held little to no job responsibilities.

34. On August 9, 2017, Plaintiff was again offered a contractor position ▮▮▮ ▮▮▮, for which he was able to use his existing contractor-based security clearance.

35. Plaintiff accepted this contractor position, with the knowledge that he would still miss

6

out on career advancement, security, and benefits. He received no plausible explanation for this denial other than, upon information and belief, religious discrimination.

36. In the contactor position, Plaintiff has access to be read on to the same data he would have accessed in the failed employee position, and performs substantially similar duties as he would have in that position had his security clearance been completed.

**B.     Initiation of Administrative Complaints Against Relevant Agencies**

37. On August 16, 2017, Plaintiff contacted the NGA Office of Diversity Management and Equal Employment Opportunity against NGA.

38. Plaintiff also contacted a counselor to file a complaint against the CIA on August 16, 2017.

39. Both complaints were timely under the NO FEAR Act, as they were within 45 days of Plaintiff's constructive discharge by NGA and the CIA due to religious discrimination.

40. On November 2, 2017, Plaintiff filed a formal complaint of discrimination.

41. According to NGA, Plaintiff's formal complaint was investigated from February 14, 2018 to June 14, 2018.

42. In a decision dated December 13, 2017, the CIA issued its Final Agency Decision ("FAD"), asserting that Plaintiff failed to state a claim of religious discrimination.

43. Through counsel, on January 12, 2018 Plaintiff timely appealed the CIA's FAD to the U.S. Equal Employment Opportunity Commission ("EEOC").

44. On October 24, 2018, Plaintiff's counsel requested the status of any ruling on Plaintiff's appeal of the CIA's FAD.

45. On December 17, 2018, NGA issued its FAD, asserting that Plaintiff failed to establish a factual basis from which to conclude he was subjected to religious discrimination.

46. In NGA's FAD, NGA points the finger entirely at the CIA for the actions against Plaintiff, asserting that the CIA controlled the mental health evaluation and conducted the Staff-Like Access processing.

47. NGA wholly blamed the CIA for the actions which Plaintiff suffered, even though NGA, not the CIA, directly employed Plaintiff.

48. On both January 3, 2019 and January 4, 2019, Plaintiff's counsel later again requested an update from the EEOC on the status of the appeal to the EEOC regarding Plaintiff's claims against the CIA.

49. To this date, Plaintiff's counsel has never heard back from the EEOC in response to those letters, despite the requirement of the EEOC to send any appellate decision to Plaintiff's representatives by first class mail.

50. On January 17, 2019, Plaintiff appealed the NGA's FAD to the EEOC.

51. On August 4, 2020, the EEOC affirmed the NGA's FAD.

52. In a footnote in the EEOC's Decision regarding NGA, Plaintiff's counsel finally received notice that Plaintiff's claims against the CIA, which were timely appealed, had been previously dismissed on a procedural finding that NGA took the alleged discriminatory actions, rather than the CIA.

53. This action is timely, as it is within 90 days of counsel's receipt of the EEOC's August 4, 2020 decision affirming NGA's FAD, and is further within 90 days of Plaintiff's counsel first receiving notice of the EEOC's decision dismissing the appeal to the CIA's FAD.

54. The CIA and NGA both maintain that the CIA does not provide the reasons for halting assignee processing.

55.     Nonetheless, by making only the conclusory statement that discriminatory reasons were not used, the CIA contradicts itself and attempts to use its non-disclosure as both a sword and a shield simultaneously.

56.     Therefore, the very real likelihood exists that the reasons for halting his processing were discussed, or revealed, to NGA officials.

57.     The CIA's cited reason for not providing additional information as to what ceased Plaintiff's processing is simply that "to do so would reveal sources and methods."

58.     This reason directly contrasts with the attempt by the CIA to selectively state that religion was not a factor used in its clearance process for assignees.

59.     The Investigative Affidavit of ▮▮▮▮▮▮▮▮▮▮ confirms that Plaintiff did not pass the medical component of his onboarding.

60.     Therefore, all responses by NGA, as well as all responses contained in the Investigative Affidavits indicating that alternative criteria may have disqualified Plaintiff rather than his testing for medical concerns (or mental health concerns), are without merit.

61.     The Investigative Affidavits of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ confirm that they either definitively were not asked about religion in their own mental health evaluations, or do not recall being asked about religion during their mental health evaluations.

62.     Plaintiff, a Muslim in a protected class, therefore experienced disparate treatment from those outside of this class, which is supported by the Investigative Affidavits.

63.     Plaintiff is aware that many of his superiors did not know of his religion until he underwent the onboarding process for the ▮▮▮▮▮▮▮▮▮▮ position.

64. This information does not negate his claims, as upon information and belief Plaintiff believes that when his religion was discovered through the onboarding process, his religion led to his constructive discharge from NGA, which resulted from the actions of the CIA.

65. At all relevant times NGA and the CIA operated as joint employers under the law, which affected Plaintiff's inability to begin the position he had been offered and accepted.

66. As a result of this unlawful discrimination, Plaintiff suffered damages, including the constructive discharge from his position, and loss of employment opportunities, lost wages and accompanying benefits, as well as mental anguish.

67. Furthermore, upon complaining about discrimination and instituting the EEO process, Plaintiff suffered retaliation in that he continued to be denied any future direct staff positions, thereby causing him to lose employment opportunities, wages and benefits, as well as suffering humiliation and mental anguish as a direct result of Defendants' actions.

## V.   CLAIMS FOR RELIEF

### Count I.
### Discrimination and Retaliation by NGA
### in Violation of Title VII of the Civil Rights Act of 1964

68. Plaintiff incorporates the above Paragraphs by reference as if fully set forth herein.

69. As a practicing Muslim, Plaintiff is a member of a protected class.

70. Plaintiff was subjected to disparate treatment on the basis of his membership in this class, when, upon information and belief, he was denied a benefit of employment on the basis of his clearly expressed, sincerely held religious beliefs. This denial resulted in Plaintiff's constructive discharge from his existing position and inability to begin his intended position.

71. Upon information and belief, and as evidenced by the Investigative Affidavits referenced above, similarly situated individuals were not subjected to questioning regarding their religious beliefs and practices in the course of their mental health examinations.

72. Defendants have no legitimate business reason for the failure to complete Plaintiff's security clearance application, and any claimed legitimate business reason is mere pretext, as Plaintiff was demonstrably qualified for the position, and has no history of mental health concerns, criminal activity, or disciplinary action that would disqualify him for the necessary clearance.

73. Based on the foregoing, the NGA unlawfully discriminated against Plaintiff on the basis of his religion in violation of 42 U.S.C. § 2000e et. seq.

74. As a result of this unlawful discrimination, Plaintiff suffered damages, including the constructive discharge from his position, and loss of employment opportunities, lost wages and accompanying benefits, as well as mental anguish.

75. Plaintiff has satisfied all conditions precedent for bringing suit under Title VII.

76. Upon complaining about discrimination and instituting the EEO process, Plaintiff suffered retaliation in that he continued to be denied any future direct staff positions, thereby causing him to lose employment opportunities, wages and benefits, as well as suffering humiliation and mental anguish as a direct result of Defendants' actions.

## Count II.

### Discrimination and Retaliation by the CIA
### in Violation of Title VII of the Civil Rights Act of 1964

77. Plaintiff incorporates the above Paragraphs by reference as if fully set forth herein.

78. As a practicing Muslim, Plaintiff is a member of a protected class.

79. Plaintiff was subjected to disparate treatment on the basis of his membership in this class, when, upon information and belief, he was denied a benefit of employment on the basis of his clearly expressed, sincerely held religious beliefs. This denial resulted in Plaintiff's constructive discharge from his existing position and inability to begin his intended position.

80. Upon information and belief, and as evidenced by the Investigative Affidavits referenced above, similarly situated individuals were not subjected to questioning regarding their religious beliefs and practices in the course of their mental health examinations.

81. The CIA's self-serving and conclusory statements that non-discriminatory factors disqualified Plaintiff provide Plaintiff with no way to determine whether or not his sincerely-held religious beliefs were the reason his assignee processing ceased, where the CIA has refused to provide any explanation for the halting of that processing.

82. The CIA's cited reason for not providing additional information as to what caused Plaintiff to fail his mental health evaluation that "because to do so would reveal sources and methods" is directly contrasted by the CIA's statement that religion was not a factor used in its clearance process for assignees.

83. Plaintiff has no history of mental health concerns, criminal activity, or disciplinary action that would disqualify him for the necessary clearance; accordingly, upon information and belief, the CIA's intrusive questioning regarding Plaintiff's sincerely held religious belief are the only plausible explanation for the disparate treatment that he was subjected to.

84. Based on the foregoing, the CIA unlawfully discriminated against Plaintiff on the basis of his religion in violation of 42 U.S.C. § 2000e et. seq.

85. Plaintiff has satisfied all conditions precedent for bringing suit under Title VII.

86. Furthermore, upon complaining about discrimination and instituting the EEO process, Plaintiff suffered retaliation in that he continued to be denied any future direct staff positions, thereby causing him to lose employment opportunities, wages and benefits, as well as suffering humiliation and mental anguish as a direct result of Defendant's actions.

## VI. JURY DEMAND

87. Plaintiff hereby demands a trial by jury on the claims set forth herein.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Nathan Mowery prays that this Court enter an order:

(a) Clearing any negative references or actions from Plaintiff's disciplinary file;

(b) Enjoining the NGA from discriminating in the future on the basis of an employee's or contractor's religious beliefs;

(c) Enjoining the CIA from discriminating in the future on the basis of an employee's or contractor's religious beliefs;

(d) Awarding all lost wages and other economic damages to which the Plaintiff is legally entitled;

(e) Awarding compensatory damages to Plaintiff for mental anguish caused by NGA over the course of its discriminatory course of conduct;

(f) Awarding compensatory damages to Plaintiff for mental anguish caused by the CIA over the course of its discriminatory course of conduct;

(g) Awarding compensatory damages to Plaintiff for emotional pain, suffering and humiliation caused by NGA and the CIA over the course of its discriminatory course of conduct;

(h) Awarding punitive damages caused by Defendants' acts of discrimination and retaliation taken with malice and with reckless disregard for Plaintiff's federally protected rights;

(i) Awarding Plaintiff his reasonable attorney fees and costs of this action; and

(j) Awarding such other relief as this Court deems appropriate.

Respectfully submitted this 2nd day of November, 2020.

                    ***/s/ Christina A. Jump***
                    Christina A. Jump
                    DC ID No. TX151
                    Charles D. Swift
                    DC ID No. 987353
                    Alyssa F. Morrison
                    DC admission pending
                    Constitutional Law Center
                    for Muslims in America ("CLCMA")
                    833 E. Arapaho Rd., Suite 102
                    Richardson, TX 75081
                    Tel: (972) 914-2507
                    Fax: (972) 692-7454
                    cjump@clcma.org
                    cswift@clcma.org
                    amorrison@clcma.org