# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
# Alexandria Division

| | |
|---|---|
| NATHAN MOWERY,  ) | |
|       Plaintiff,  ) | |
| ) | |
| v.  ) | Civil Action No. 1:21-cv-226 |
| ) | |
| NATIONAL GEOSPATIAL INTELLIGENCE  ) | |
| AGENCY  ) | |
| ) | |
| &  ) | |
| ) | |
| WILLIAM BURNS, Director of the Central  ) | |
| Intelligence Agency  ) | |
|       Defendants.  ) | |

## MEMORANDUM OPINION

At issue in this employment discrimination action is Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Rule 12(b)(1), Fed. R. Civ. P.[1] This motion has been fully briefed and argued, including a telephonic hearing on the matter that occurred on June 10, 2021. Following the telephonic hearing on June 10, 2021, the parties complied with an Order dated June 11, 2021 directing the submission of additional briefing and/or evidence regarding the question whether subject matter jurisdiction exists here. These submitted materials[2] have been reviewed and considered. Accordingly, the matter is now ripe for disposition.

## I.

The following facts, appropriately derived from the Complaint and the submitted

---

[1] Defendants have also filed a Rule 12(b)(6) Motion to Dismiss (Dkt. 17) for failure to state plausible claims for relief. It is neither necessary nor appropriate to address Defendants' Rule 12(b)(6) motion, as Defendants' Rule 12(b)(1) motion correctly argues that there is no federal subject matter jurisdiction for this matter. *See infra* Part II.

[2] The materials submitted included: (1) Plaintiff's Supplemental Briefing (Dkt. 36); (2) Defendants' Supplemental Briefing (Dkt. 37); (3) an email from the CIA to Plaintiff dated May 17, 2017 (Dkt. 37-1); and (4) an Affidavit from Douglas Cooper, Plaintiffs' former NGA Branch Chief (Dkt. 37-2). Defendants have also filed a Declaration from Vanna Blaine, a CIA Information Review Officer (Dkt. 18-1). No party has objected to the consideration of these materials in connection with Defendants' Rule 12(b)(1) motion.

1

evidence,[3] are pertinent to the question whether subject matter jurisdiction exists here.

- Plaintiff Nathan Mowery is a U.S. Army combat veteran who works as a civilian government contractor in the U.S. intelligence field.

- Defendant National Geospatial Intelligence Agency ("NGA") is a combat support agency associated with the U.S. Department of Defense ("DOD") and the Central Intelligence Agency ("CIA").

- Defendant William Burns is the Director of the CIA.

- In May 2014, Plaintiff obtained a security clearance and was employed as a civilian government contractor by the NGA. Plaintiff's worksite for this government contractor position was a CIA worksite. As a government contractor for NGA, Plaintiff had Staff Like Access to certain secure government information.

- On November 13, 2016, Plaintiff accepted a conditional offer of employment with NGA to serve as an NGA government employee assigned to the CIA ("CIA Assignee position"). As a CIA Assignee, Plaintiff would continue to work at a CIA worksite but would transition from his current government contractor role to a staff employee role, and thus receive greater job benefits.

- To secure the CIA Assignee position, Plaintiff was required to undergo and pass an additional security clearance assessment, which involved a psychological examination by a CIA-approved psychologist or psychiatrist. This additional CIA security clearance assessment is mandatory for all CIA assignees and is separate from, and in addition to, Plaintiff's May 2014 security clearance assessment.[4]

- On December 27, 2016, Plaintiff underwent the required CIA psychological examination for the CIA Assignee position.

- The Complaint alleges that, during the required CIA psychological examination, a CIA psychologist or psychiatrist (the "Examining Officer") "raised" the subject of Plaintiff's recent conversion to Islam and asked Plaintiff what the Complaint alleges was a "disproportionate" number of questions about Plaintiff's religion. Compl. ¶ 23 Specifically:

---

[3] *Saval v. BL Ltd.*, 710 F.2d 1027, 1029 n.2 (4th Cir. 1983) (federal courts "may consider affidavits and other extrinsic information to determine whether subject matter jurisdiction exists"); *Hamilton v. Pallozzi*, 848 F.3d 614, 621 n.3 (4th Cir. 2017) (same); *Murphy v. Sec., U.S. Dep't of Army*, 769 F. App'x 779, 781–82 (11th Cir. 2019) (district courts may "weigh evidence related to jurisdiction" in considering Rule 12(b)(1) motion to dismiss challenge to a security clearance decision); *Bennett v. Ridge*, 321 F. Supp. 2d 49, 52–53 (D.D.C. 2004) (considering "material outside of the pleadings," including six defense exhibits, as part of Rule 12(b)(1) motion to dismiss challenge to a security clearance decision), *aff'd sub nom*, *Bennett v. Chertoff*, 425 F.3d 999 (D.C. Cir. 2005).

[4] Plaintiff was also required to complete this additional security clearance assessment in order to retain his existing Staff Like Access to certain secure government information. *See* Compl. ¶¶ 14–15 (Dkt. 31).

- o The Complaint alleges that the Examining Officer first asked Plaintiff whether Plaintiff consumed alcohol.[5] Plaintiff allegedly answered that he "ha[d] not had a[n] [alcoholic] drink in the past two years." *Id.* ¶ 18.

- o The Complaint next alleges that the Examining Officer asked Plaintiff why Plaintiff did not drink alcohol. Plaintiff allegedly answered that Plaintiff's decision not to drink alcohol "was based on his religious views." *Id.*

- o The Complaint alleges that the Examining Officer then asked Plaintiff to specify the religion he was referring to. Plaintiff allegedly answered that "he had converted to Islam." *Id.* ¶ 19.

- o The Complaint alleges that the Examining Officer then asked Plaintiff (1) "whether Plaintiff prayed five times a day," (2) "what mosque [Plaintiff] attended," and (3) unspecified "additional questions" about Plaintiff's religion. *Id.* ¶ 20. The Complaint does not disclose whether Plaintiff responded to these questions from the Examining Officer.

- The Complaint also alleges that other CIA Assignee applicants were not asked about their religious beliefs during their respective psychological examinations.

- Plaintiff's NGA Branch Chief, Douglas Cooper, has filed an Affidavit stating that he does "not think [Plaintiff] was discriminated [against] due to his religious beliefs. There have been and currently are officers [at NGA] who practice the Muslim religion and [that] have [] had the appropriate access." Cooper Affidavit at 8.

- On May 17, 2017, six months after the required psychological examination, Plaintiff received an email from the CIA.

- The May 17, 2017 email stated that the CIA would "no longer continue [Plaintiff's] assignee processing" and that "[t]here is no appeal regarding this decision nor will additional information be provided." May 17, 2017 Email at 1 (Dkt. 37-1). In full, the May 17, 2017 email states:

  > Good Morning Mr. Mowery,
  >
  > Unfortunately, we have determined that we can no longer continue your assignee processing. The determination was based on information you provided us or was otherwise obtained during your Staff-Like Access processing. There is no appeal regarding this decision nor will additional information be provided.

---

[5] Judicial notice pursuant to Rule 201, Fed. R. Evid., is appropriately taken of the fact that questions about alcohol use are a standard part of the general security clearance assessment process for U.S. federal government national security positions. *See* Section 24, Use of Alcohol, Standard Form 86, Questionnaire for National Security Positions, https://www.opm.gov/forms/pdf_fill/sf86.pdf (last accessed July 26, 2021).

> Please note that this email does not represent a security clearance denial for a National Security position. When filing out future National Security Questionnaires—Standard Form 86 (SF-86) application forms and related documents, you should note that **you were not denied** a security clearance for this application.
>
> Please inform your DoD Program Manager. We also ask that DoD inform the appropriate CIA Component, Mission Center, or Directorate of this decision.
>
> Thank you.

March 17, 2017 Email at 1 (emphasis in original); *see also* Compl. ¶¶ 24–27.

- On June 9, 2017, the CIA informed NGA that Plaintiff's CIA Assignee security clearance assessment had been "halted" due to a "failed mental health evaluation." Compl. ¶ 28. At this time, the CIA also informed NGA that Plaintiff's completed security packet "was not the issue." *Id.* ¶ 29.

- On July 24, 2017, NGA reassigned Plaintiff from his then NGA position to a position that entailed less responsibility and that was not located at a CIA worksite ("Staff Officer position"). No party disputes that NGA reassigned Plaintiff to this Staff Officer position because Plaintiff was no longer permitted to access the pertinent CIA worksite, and thus could not perform his then-existing NGA job duties.

- Between July 24, 2017 and August 9, 2017, Plaintiff worked as an NGA Staff Officer.

- On August 9, 2017, Plaintiff resigned his NGA Staff Officer position, accepting a different government contractor position in which Plaintiff could use his pre-existing contractor-based security clearance from May 2014.

- On or about August 16, 2017, Plaintiff filed an EEO complaint against the CIA, alleging that the CIA discriminated against Plaintiff on the basis of his religion (1) by failing to process Plaintiff's CIA Assignee security clearance assessment and (2) by constructively discharging Plaintiff from his NGA position in July and/or August 2017. The EEOC dismissed Plaintiff's EEO complaint against the CIA. *See Santiago S., a pseudonym v. Haspel*, No. 17-25, 2018 WL 3584257, at *3 (EEOC July 13, 2018); *see also* Compl. ¶¶ 38, 52.

- On November 2, 2017, Plaintiff filed an EEO complaint against NGA, alleging that NGA discriminated against Plaintiff on the basis of his religion by constructively discharging Plaintiff from his position in July and/or August 2017. The EEOC dismissed Plaintiff's EEO complaint against NGA. *See Jonathan V., a pseudonym v.*

4

*Esper*, No. NGAE00422017, 2020 WL 5822963, at *4 (EEOC Aug. 4, 2020); *see also* Compl. ¶¶ 40, 51.

- On November 2, 2020, Plaintiff brought this action against the NGA and William Burns, Director of the CIA (collectively, "Defendants").

- The Complaint alleges against each Defendant a Title VII claim for unlawful discrimination and retaliation on the basis of Plaintiff's religion.

  o These two Title VII claims, Counts 1 and 2, allege that the CIA's decision to halt processing Plantiff's CIA Assignee security clearance assessment resulted in Plaintiff's (1) "inability to begin" the CIA Assignee position and (2) "constructive discharge from his existing position." Compl. ¶¶ 70, 79.

  o The Complaint seeks monetary damages and injunctive relief, including an Order (1) that enjoins Defendants "from discriminating in the future on the basis of an employees' or contractors' religious beliefs" and (2) that requires Defendants to remove "any negative reference or actions from Plaintiff's disciplinary file." *Id.* at 13.

## II.

The sole question presented is whether there is federal subject matter jurisdiction to review Plaintiff's Title VII claims, challenging the Executive Branch's security clearance decision. This is not a novel question; this question was addressed and decided by the Supreme Court in *Dep't of Navy v. Egan*, 484 U.S. 518 (1988), a case which held that the "grant of security clearance to a particular employee . . . is committed by law to the appropriate agency of the Executive Branch" and is not judicially reviewable. *Id.* at 527.[6] In *Egan*, a civilian employee of the U.S. Navy ("Egan") lost his job repairing a U.S. Navy submarine carrying nuclear weapons because Egan (i) disclosed a prior drinking problem and prior criminal convictions for assault and gun possession during his security clearance assessment process and (ii) failed to disclose two additional criminal convictions for gun possession during his security clearance assessment process. *See id.* at 521.

---

[6] To be clear, *Egan* held that security clearance decisions are non-reviewable by an "outside nonexpert body," in that case, the Merit Systems Protection Board. *Id.* at 529. There is no doubt here that *Egan* precludes review of security clearance decisions by other "outside nonexpert bod[ies]," such as Article III courts. *Campbell v. McCarthy*, 952 F.3d 193, 202 (4th Cir. 2020) ("*Egan* generally proscribes judicial review of a security clearance decision.").

Following his removal, Egan sought administrative review, and ultimately the full Merit Systems Protection Board ("MSPB") concluded that the MSPB lacked authority to review the underlying basis for Egan's removal, as that was the Navy's non-reviewable security clearance decision. *See id.* at 524. Egan appealed to the Federal Circuit, which reversed the MSPB's decision in a split opinion. *See id.* at 525. On review, the Supreme Court concluded that the Civil Service Reform Act, 5 U.S.C. § 1101, *et seq.*, did not permit the MSPB to review the merits of the Navy's security clearance decision. *See id.* at 526–27. The Supreme Court reasoned, quite simply: "the grant of security clearance to a particular employee, a sensitive and inherently discretionary judgment call, is committed by law to the appropriate agency of the Executive Branch." *Id.* at 527.

The Supreme Court's decision in *Egan* has long been interpreted to preclude judicial review of security clearance decisions. Indeed, the Fourth Circuit[7] and other circuits[8] have routinely applied *Egan* to dismiss challenges to security clearance decisions for want of subject matter jurisdiction. Indeed, just last year, in *Campbell v. McCarthy*, 952 F.3d 193 (4th Cir. 2020),

---

[7] *See Campbell v. McCarthy*, 952 F.3d 193, 207 (4th Cir. 2020) (applying *Egan* to dismiss ADEA and WPA challenge to security clearance decision for want of subject matter jurisdiction); *see also Kruise v. Speer*, 693 F. App'x 213 (Mem.), 2017 WL 3098149 (4th Cir. 2017) (per curium) (applying *Egan* to affirm dismissal of Title VII challenge to security clearance decision for want of subject matter jurisdiction); *Hegab v. Long*, 716 F.3d 790, 791 (4th Cir. 2013) (applying *Egan* to affirm dismissal of APA challenge to security clearance decision for want of subject matter jurisdiction); *Reinbold v. Evers*, 187 F.3d 348, 358–59 (4th Cir. 1999) (applying *Egan* to affirm dismissal of Fourth Amendment challenge to security clearance decision for want of subject matter jurisdiction); *Becerra v. Dalton*, 94 F.3d 145, 149 (4th Cir. 1995) (applying *Egan* to affirm dismissal of Title VII challenge to the equivalent of a security clearance decision for want of subject matter jurisdiction); *Guillot v. Garrett*, 970 F.2d 1320, 1321 (4th Cir. 1992) (applying *Egan* to affirm dismissal of Rehabilitation Act challenge to security clearance decision for want of subject matter jurisdiction).

[8] *See Murphy v. Secretary, U.S. Dep't of Army*, 769 F. App'x 779, 782 (11th Cir. 2019) (applying *Egan* to affirm dismissal of Rehabilitation Act challenge to security clearance decision for want of subject matter jurisdiction); *Sanchez v. Dep't of Energy*, 870 F.3d 1185, 1192 (10th Cir. 2017) (applying *Egan* to dismiss procedural due process challenge to the equivalent of a security clearance decision for want of subject matter jurisdiction); *Whitney v. Carter*, 628 F. App'x 446, 447 (Mem) (7th Cir. 2016) (applying *Egan* to affirm dismissal of unspecified "discrimination" challenge to security clearance decision as non-justiciable); *Wilson v. Dep't of Navy*, 843 F.3d 931, 935 (Fed. Cir. 2016) (applying *Egan* to dismiss Uniformed Services Employment and Reemployment Rights Act challenge to security clearance decision as non-justiciable); *Foote v. Moniz*, 751 F. 3d 656, 658 (D.C. Cir. 2014) (applying *Egan* to affirm dismissal of Title VII challenge to the equivalent of a security clearance decision as non-justiciable); *Panoke v. U.S. Army Military Police Brigade, Hawaii*, 307 F. App'x 54, 56 (9th Cir. 2009) (applying *Egan* to affirm dismissal of Title VII challenge to security clearance decision as non-justiciable).

the Fourth Circuit concluded that a district judge committed reversible error in failing to dismiss, for lack of subject matter jurisdiction, a Title VII, ADEA, and WPA employment discrimination action brought by a Department of Defense employee. *Id.* at 207. The Fourth Circuit's opinion in *Campbell* is unmistakably clear: *Egan* is settled law and district courts are duty bound to dismiss, for lack of subject matter jurisdiction, challenges to Executive Branch security clearance decisions.

The settled *Egan* rule is straightforward: a district court must dismiss, for lack of subject matter jurisdiction, an employment discrimination action if resolution of the action "necessarily depends upon a review of . . . [a] security clearance decision," that is, "review of the very issue that the Supreme Court [in *Egan*] held is non-reviewable." *Id.* at 206 (internal marks omitted). And here, there can be no doubt that Plaintiff's Title VII claims in this case "depend[] upon a review of . . . [a] security clearance decision." *Id.* This is so because the challenged adverse employment actions here are (1) the CIA's May 17, 2017 security clearance decision (clearly unreviewable under *Egan*) and (2) the NGA's alleged "constructive discharge" of Plaintiff from a position he was admittedly unable to perform as a result of the CIA's May 17, 2017 security clearance decision.[9] Accordingly, this Title VII action must be dismissed for want of subject matter jurisdiction.

---

[9] No party disputes that Plaintiff could not continue his then-existing NGA position at a CIA worksite following the CIA's May 17, 2017 security clearance decision. *See Jonathan V., a pseudonym v. Esper*, No. NGAE00422017, 2020 WL 5822963, at *4 (EEOC Aug. 4, 2020) ("It is undisputed that [Plaintiff] could only perform his duties . . . at [the CIA worksite] location"); Cooper Affidavit at 6–8 (same); Compl. at 3 ("Plaintiff's claims against NGA are related to and inextricably intertwined with, not separate from, his claims against the CIA."); Compl. ¶¶ 64, 70, 79 (same). As a result, the only way for Plaintiff to prevail on his constructive discharge claim is to establish that the CIA's May 17, 2017 security clearance decision was discriminatory. And clearly, such a challenge is unreviewable under *Egan*. *See supra* notes 7 and 8.

It is also worth noting that, in response to the CIA's May 17, 2017 security clearance decision, NGA took the initiative to find Plaintiff a new job, even though NGA was not required to do so under settled Fourth Circuit authority. *See Campbell v. McCarthy*, 952 F.3d 193, 206 (4th Cir. 2020) (internal citation omitted) ("*Egan* does not impose on an agency the obligation, independent of statute or regulation, to transfer employees who lose their security clearance."); *see also Guillot v. Garret*, 970 F.2d 1320, 1327 (4th Cir. 1992) (same). Two weeks after NGA had found Plaintiff another job, Plaintiff voluntarily resigned from this position.

It is simply not possible to review Plaintiff's Title VII claims against the CIA and NGA without doing what *Egan* prohibits: to review a security clearance decision. In this respect, it is worth remembering that Title VII claims are governed by the familiar three-part *McDonnell Douglas* test. At steps 2 and 3, the district court must evaluate the employer's proffered non-discriminatory reason for the alleged impermissible employment action. And here, steps 2 and 3 unavoidably require close review of the CIA's security clearance decision that Plaintiff was not fit for the CIA Assignee position, for this is the proffered non-discriminatory reason for the alleged adverse employment actions. To be explicit, if this Title VII matter proceeded to discovery or trial under the *McDonnell Douglas* test, then the Examining Officer, and any other CIA decision-maker involved, would be required to testify, under oath, as to the specific reasons the CIA stopped processing Plaintiff's CIA Assignee security clearance assessment. These reasons might well include description of the classified combat support duties Plaintiff would have performed had he received the CIA Assignee position. Clearly, to allow and evaluate testimony of this sort runs afoul of *Egan*, as it requires the district court to do what *Egan* prohibits: to review a security clearance decision. Plaintiff's Title VII claims simply cannot be reviewed without passing judgment on Plaintiff's CIA Assignee security clearance assessment, and thus this Title VII action must be dismissed for lack of subject matter jurisdiction.

Nor is this the first case involving an unreviewable challenge to the predictive national security judgment of a CIA or Executive Branch psychologist. Instructive in this regard are *Foote v. Moniz*, 751 F.3d 656 (D.C. Cir. 2014) and *Sanchez v. Dep't of Energy*, 870 F.3d 1185 (10th Cir. 2017), recent circuit cases holding that a psychologist's decision "not to certify an applicant" under a national security program is precisely the sort of predictive judgment "covered by *Egan*" and thus non-reviewable by federal courts. *Foote*, 751 F.3d at 657–58; *see also Sanchez*, 870 F.3d at

8

1193–94. Here, similar to *Foote* and *Sanchez*, the Examining Officer in this case made a predictive national security judgment regarding Plaintiff's fitness for the CIA Assignee position. *See* Blaine Affidavit ¶¶ 9–10 ("Based on Mr. Mowery's psychological examination, the psychologist made the predictive assessment that, at that point in time, there were concerns with Mr. Mowery's ability to meet the standards set forth in ICPG 704.2" on access to sensitive information). It is simply not possible to review Plaintiff's Title VII claims under the three-part *McDonnell Douglas* test without reviewing the Examining Officer's predictive judgment of national security. Accordingly, this Title VII action must be dismissed for lack of subject matter jurisdiction.[10]

Seeking to avoid this conclusion, Plaintiff argues that Plaintiff's Title VII claims do not require judicial review of a security clearance decision inasmuch as the Complaint seeks injunctive relief, namely, an Order that precludes Defendants from "discriminating in the future on the basis of . . . religious belief." Compl. at 13. This argument misses the mark. An injunction may not properly issue without full consideration of the factual basis for enjoining the alleged impermissible conduct. Therefore, to issue or enforce an injunction, a district court must do what *Egan* flatly prohibits: to review a security clearance decision. It is simply not possible to issue or enforce an injunction without passing judgment on the challenged security clearance decision. Accordingly, nothing about the Complaint's requested injunctive relief alters the result reached

---

[10] Separate and apart from *Egan* and its progeny, 42 U.S.C. § 2000e-2(g), a provision of Title VII, independently precludes judicial review of Plaintiff's Title VII claims. This provision, titled *National Security*, states that:

> [I]t shall not be an unlawful employment practice for an employer to fail or refuse to hire and employ any individual for any position . . . if the occupancy of such position . . . is subject to any requirement imposed in the interest of national security . . . and such individual has not fulfilled or has ceased to fulfill that requirement.

The Fifth Circuit has correctly interpreted § 2000e-2(g) "broadly" to preclude review of adverse personnel actions concerning "any set of regulations related to matters of national security." *Toy v. Holder*, 714 F.3d 881, 886 (5th Cir. 2013). And here, as Defendants correctly argue, the CIA Assignee position was subject to numerous regulations related to matters of national security, including Executive Orders 10450, 12333, 13526, 12968, and 13467. Blaine Affidavit ¶ 5. Thus, for this additional reason, Plaintiff's Title VII claims must be dismissed.

9

here that there is no subject matter jurisdiction to review this Title VII action.

Next, Plaintiff argues that neither *Egan* nor its progeny governs here because those cases typically involve formal denials of security clearances, not decisions to halt processing security clearance assessments. This argument is a distinction without a difference. There is simply no difference under *Egan* between a decision to halt processing a security clearance assessment and a formal denial of a security clearance application. Both are "predictive judgment[s]" of national security and thus are judicially non-reviewable. *Egan*, 484 U.S. at 529.

Instructive in this regard is *Becerra v. Dalton*, 94 F.3d 145 (4th Cir. 1996), in which the Fourth Circuit rejected a similar argument that *Egan* precludes only review of "the denial of a security clearance" and thus permits review of "the initiation of a security investigation." *Id.* at 149 ("We find that the distinction between the initiation of a security investigation and the denial of a security clearance is a distinction without a difference."). Indeed, as the Fourth Circuit made clear in *Campbell v. McCarthy*, 952 F.3d 193 (4th Cir. 2020), *Egan* precludes judicial review of "security clearance *decisions*," and not solely the formal denial of a security clearance. *Id.* at 203 (emphasis added). Thus, nothing about Plaintiff's proffered distinction between the formal denial of a security clearance and the CIA's decision to halt processing Plaintiff's security clearance assessment alters the result reached here that there is no subject matter jurisdiction to review this Title VII action.

Clearly, the CIA's decision to halt processing Plaintiff's CIA Assignee security clearance assessment is *itself* a security clearance decision. And that decision is a "predictive judgment" of national security that is unreviewable under *Egan*. *Egan*, 484 U.S. at 529; *see also Foote v. Moniz*, 751 F.3d 656, 657–58 (D.C. Cir. 2014) (decision "not to certify an applicant" under national security program for assessing reliability "is the kind of judgment covered by *Egan*"). Indeed, the

10

Complaint essentially concedes this very point, as it accepts that Defendants' decision to halt processing Plaintiff's security clearance assessment was "an effective denial of a security clearance." Compl. ¶ 27; *see also Lucas v. Burnley*, 879 F.2d 1240, 1242 (4th Cir. 1989) ("The general rule is that a party is bound by the admissions of his pleadings."). Accordingly, nothing about Plaintiff's proffered distinction alters the result reached here that there is no subject matter jurisdiction to review this Title VII action.[11]

Finally, Plaintiff argues that subject matter jurisdiction exists because *Egan* is supposedly premised on the idea that meaningful administrative review of a security clearance decision obviates the need for judicial review. This argument overlooks that the EEOC has now twice reviewed and rejected Plaintiff's administrative claims[12] and further misreads the basis for the Supreme Court's decision in *Egan*. The Supreme Court's holding in *Egan* that security clearance decisions are judicially non-reviewable is premised on three principles, none of which concerns the adequacy of administrative review. First, the *Egan* rule is premised on the principle that the

---

[11] Seeking to avoid this conclusion, Plaintiff argues that *Egan* precludes nothing more than judicial review of formal denials of security clearances. In support of this argument, Plaintiff cites *Eghbali v. DOE*, 90 F. Supp. 3d 587 (D.S.C. 2014), *Rattingan v. Holder*, 689 F.3d 764 (D.C. Cir. 2012), *Foote v. Chu*, 928 F. Supp. 2d 96 (D.D.C. 2013), *Guatney v. TVA Bd. of Dirs.*, 9 F. Supp. 3d 1245 (N.D. Ala. 2014), and *Kahook v. Savannah River Unclear Sols. LLC*, No. 1:11-2393, 2013 WL 1110804 (D.S.C. Jan. 25, 2013). None of these cases alters the result reached here that there is no subject matter jurisdiction to review Plaintiff's Title VII claims.

To begin with, *Eghabli* is distinguishable and thus unpersuasive. That case did not involve a security clearance decision or even a job requiring a security clearance. Instead, the question presented there was whether the defendant's untrained employee could act outside of the formal security clearance process to preclude the plaintiff from accessing his jobsite. Second, *Rattingan* is distinguishable and thus unpersuasive, for there, unlike here, the D.C. Circuit addressed an issue similar to that presented in *Eghbali*, namely, whether *Egan* precludes judicial review of a decision made by an *untrained* Executive Branch employee. Third, the district court's opinion in *Foote* is distinguishable and thus unpersuasive, for the court of appeals ultimately dismissed Plaintiff's claims pursuant to *Egan*. Fourth, *Gautney* is distinguishable and thus unpersuasive because the quoted portion of *Gautney* concerns selective enforcement, which no party argues occurred here. Fifth, *Kahook* is distinguishable and thus unpersuasive, for that case concerned in pertinent part whether an employer could change its policy on how to treat employees with suspended clearances.

[12] *See Santiago S., a pseudonym v. Haspel*, No. 17-25, 2018 WL 3584257, at *3 (EEOC July 13, 2018) (affirming dismissal of Plaintiff's EEO complaint against the CIA); *see also Jonathan V., a pseudonym v. Esper*, No. NGAE00422017, 2020 WL 5822963, at *4 (EEOC Aug. 4, 2020) (affirming dismissal of Plaintiff's EEO complaint against the NGA).

11

Executive Branch is the sole branch with the "necessary expertise" to protect classified information, and therefore that decision on who may access classified information "must be committed to the broad discretion of the agency responsible." *Egan*, 484 U.S. at 529. Second, the *Egan* rule is premised on the principle that "no one has a 'right' to a security clearance," and therefore that an adverse security clearance decision is not necessarily a harm for which there is a legal remedy. *Id.* at 528. Third, the *Egan* rule is premised on the separation of powers, essentially that Article II properly commits decisions on security clearances to the Executive Branch, not to be reviewed by an "outside [] body" such as an Article III court. *See Egan*, 484 U.S. at 527 ("The authority to protect [national security] information falls on the President as head of the Executive Branch and as Commander in Chief."). In other words, the Constitution, as interpreted by *Egan*, commands a true *separation* of powers with respect to security clearance decisions. And that separation of powers vests security clearance decisions with the Executive Branch. Thus, none of Plaintiff's arguments alters the result reached here that this Title VII action must be dismissed for lack of subject matter jurisdiction. Thus, none of Plaintiff's arguments alters the result reached here that this Title VII action must be dismissed for lack of subject matter jurisdiction.

In sum, Plaintiff's Title VII claims challenging a CIA security clearance decision must be dismissed for lack of subject matter jurisdiction pursuant to *Egan*.[13]

---

[13] It must be noted that the Complaint asserts solely Title VII claims and thus does not assert (1) a constitutional claim or cause of action, as in *Hegab v. Long*, 716 F.3d 790, 793 (4th Cir. 2013) or (2) a procedural due process claim, as in *Jamil v. Sec., Dep't of Defense*, 910 F.2d 1203, 1208 (4th Cir. 1990). Plaintiff has not sought leave to amend to assert these or other claims. In any event, a plaintiff cannot "circumvent" *Egan* by classifying a challenge to a security clearance decision as a constitutional claim. *Hegab*, 716 F.3d at 795–96 (dismissing constitutional claim challenging security clearance decision for lack of subject matter jurisdiction). As for any procedural due process claim, it is worth noting that Intelligence Community Policy Guidance No. 704.3, cited only in Plaintiff's supplemental briefing, is not necessarily a federal security clearance regulation. It is policy "guidance," which by its terms "does not create or confer on any person or entity any right to administrative or judicial review." *Id.* ¶¶ D.2 & D.5, https://www.dni.gov/files/documents/ICPG/icpg_704_3.pdf (last accessed July 26, 2021); *see also Christensen v. Harris County*, 529 U.S. 576, 587 (2000) ("policy statements, agency manuals, and enforcement guidelines . . . lack the force of law").

An appropriate Order will issue separately. The Clerk is directed to provide a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
July 26, 2021

                                                /s/
T. S. Ellis, III
United States District Judge